Good morning. May it please the court, my name is Peter Goldberger. It's my privilege this morning to represent Vicente Castro-Taveras, who was the petitioner below. I'd like to reserve two minutes of my time for rebuttal. You may. Thank you. The government's shifting positions have complicated this appeal, but I would like to start at the beginning, in the simple place. The district court erred when it denied Mr. Castro's Corum Novus petition on the basis that it depended on a new rule announced in Padilla versus Kentucky, since Padilla is not retroactive. Now, I understand it. The government does not defend that position. They don't defend it even in the alternative. Because the rule that was new in Padilla is the rule that an attorney must affirmatively give correct immigration advice to a defendant facing a plea decision or sentencing. Where does the word correct come from? Yeah, where does the word correct, you just said correct. In a case which is clear, that is the heart of what Padilla talks about. I'm not sure that I'm quoting that word from anywhere in the Padilla decision. I thought Padilla said the failure to advise. Where the consequences are clear, at least. There's discussion in Padilla that some immigration questions are not discernible with certainty. But where it is clear. The Padilla rule, prospective as a result of Chávez, is a failure to advise. Correct. Right. Well, here there was not a failure to advise. The record, well, the undisputed record. Your argument is that it was inaccurate advice. Right. Right. And when a lawyer gives erroneous advice about any matter of potential importance to the client, that violates the standard of effective assistance under long preexisting law. There was nothing new in Padilla about that. Do we have to go that far? I thought your argument was potentially narrower than that, which is whatever the scope of the duty to not misadvise might be, it certainly is a duty that applies with respect to a plea. Yes. And if the misadvice would render the plea what? Not knowing? Or are you saying it's enough if even if it wouldn't render it a not knowing plea, but it would render it so that we would have doubt as to whether he would have pled? Well, there were three different constitutional claims that were made in this case. No, I understand that. I'm not. But it goes to your question. Well, I want to just for the Sixth Amendment purpose. For the Sixth Amendment purpose, it seems to me the narrowest formulation of it would be that where the advice would render it not knowing in a constitutional sense, that is a Sixth Amendment violation. That would be the prejudice prong of the Strickland analysis. Not always. I thought prejudice would be might he not have pled? Correct. But you're saying I think something stronger, which is here the plea was not knowing in consequence of the misadvice. We do make that argument, but I make it, I don't mean to quibble and I don't know that it's important, but I would say that was a Fifth Amendment due process issue, not a Sixth Amendment issue because a plea which is unknowing does not effectively waive the rights and is not a valid. So that's guilty plea law more than ineffective assistance law, but you get to exactly the same place. And in this case, in fact, there was a third argument, which was that there was also a breach of the plea agreement because the contention made in the affidavits from Mr. Castro and his attorney, which were undisputed in the lower court, is that the United States attorney participated in these discussions. And because he was, remember Mr. Castro was a cooperator. So this is a friendly discussion about the plea and how it will go down and how it will be, certainly it's being negotiated between adversaries, but they all want him to be happy and they want to have his testimony. He winds up being the only one who testifies in this whole conspiracy against the one who goes to trial. So the United States attorney participates in the discussion and says this plea, as we are structuring it, cannot affect your immigration. Can I go back to the Fifth Amendment, the 14th Amendment due process and the Fifth Amendment, Fifth Amendment and the Sixth Amendment issue for a second. What is the status of the Fifth Amendment issue in this case? The district court just didn't address it. And what does that mean didn't address it? He thought it was waived or he just didn't say anything about it? I mean, what does the court say? He doesn't say anything. He seems to want to conflate it with the Sixth Amendment issue. I think that's He seems to take the view that whatever the prosecutor might have said, that did not intrude on the relationship between your client and his attorney. Isn't that, from your point of view, the fundamental error that, at least with respect to your, because it is a distinct Fifth Amendment claim, that is the error that the district court makes. With respect to that claim, he misconstrued the nature of the is exactly how he discussed it in the last paragraph of the opinion of the district court. Can I just understand that on the Fifth Amendment claim? Is your Fifth Amendment claim dependent on the prosecutor being the source of the misadvice? Or could there be a Fifth Amendment claim if the defense attorney is? Certainly both. And what does the district court say with respect to the Fifth Amendment claim if the defense attorney is the source of the misadvice? I think he, again, conflates it with what he construes to be, he's focused too much on Padilla. He thinks this is a Padilla claim. Look, this new Supreme Court case came out. This gentleman now is thinking about this issue, thinks he has a way to solve his problem. He files a Coram Novus petition. This is a Padilla case. The judge is mistakenly overly focused on that. But I don't mean to psychologize the judge's opinion. It's an error. For whatever source. Does this panel have to decide whether the First Circuit agrees with the Second and Ninth or the Seventh? There is a split on whether misinformed advice existed before Padilla and survives in spite of Chidas. Well, I think you do have to decide it, but I don't think it would be decided for the first time. There's a large body of law from the 70s that I cited in my brief, most of which is about parole eligibility, which is precisely analogous here to this problem. About that wrong, even where there's no obligation to advise at all about parole eligibility, to give wrong advice can be ineffective assistance of counsel or render the plea involuntary. These are First Circuit cases? Yes. Counsel, Sepulonus is the leading one, and there are about four or five on this general subject, which I cite in my brief. From your perspective, if we find your Sixth Amendment argument problematic, if we were to Sixth Amendment issue, your Fifth Amendment issue, based upon the alleged misrepresentations by the prosecutor, in your view, would be sufficient to render the plea involuntary. Is that your position? Yes, or to trigger a finding of a violation of a plea agreement, which is also enforceable under the Due Process Clause. With respect to that, just in terms of relief, if we were to vacate and remand to the district court for it to consider the Fifth Amendment claim, which it did not address by making clear that that's distinct, if he were to then have that clearly in his front and center and rule for you on it, you would not lose anything by not having the Sixth Amendment claim resolved. That's quite true. The relief would be the same. We're entitled to some form in the district judge's discretion of relief which is effective to correct the denial of price. And I take it the Teague issue is not really germane to the Fifth Amendment point. That's correct. There's nothing new about either the Santabello issue or the involuntary plea. Mr. Counsel, if we were to do that, I know you would want any such remand to be accompanied by an order that the court is not to consider the evidence that you say the government brings forth for the first time in its reply brief. But why shouldn't our attitude be that it's up to the district court to decide what the scope of that hearing should be? And perhaps it would make sense that everything that the district court thinks might be relevant to finding out what actually happened here, what was said, what was the reliance, who said what. Why shouldn't the district court be free to make those judgments rather than have us from here circumscribe the scope of that hearing? I would say that it's this court's supervisory responsibility to discipline the litigation process. When the government says, has the free opportunity to present an affidavit, to ask for a hearing, presents no affidavit from the prosecutor, remains completely silent, refuses to say whether it is true or not true that the prosecutor made these statements when the matter is before the district court for decision, opposes holding a hearing on the subject, loses or wins but on an indefensible ground and on appeal, wants to change their strategy and now regrets having taken that position as a factual matter in the district court and wants to start over, the court should express disapproval. We cannot have a litigation system, be it in criminal cases, in civil cases, that allows a party to play their cards that way, trying to keep their options open to see how things work out. We have a chance to present the evidence. This is evidence from their own file, they say. The party doesn't discover, he doesn't discover either side, but in this case the government. Evidence in their own file doesn't bring it forward until they're a police brief. It messes with the appellate process, it produces a four brief instead of a three brief appeal. And it's not enough to just say, oh, do it, I would say, to just do whatever you like on remand. But, you know, if a hearing is fine, but I think the court should say something that just says this is not right and there's discipline to be imposed for not following the system. If I could reserve the rest of my time for rebuttal, I'd appreciate it. Thank you. Good morning. May it please the court. AUSA Julia Magonates for the government. Petitioner's original claim to the district court for the issuance of a writ of quorum nobis was actually a series of motions. His first motion was based primarily on ineffective assistance of counsel in which he appeals to the court in the spirit of Padilla recognizing that it is not retroactive under Chavez. And then the series of other supplemental motions all fall within the same case law. So while on appeal the argument is very well structured that there are three different errors that were brought to the district court, upon further examination of the defendant's petition to the district court, everything is cloaked in this ineffective assistance of counsel argument. From all of the cases that are cited from Padilla to Chavez to Strickland to Lockhart to Missouri v. Fry. While sometimes the words due process and the plea agreement and unknowing are brought up, a look at those pleadings shows. Is there an argument that those are waived then? Well, it's not that it was waived, but I would say that the district court understood this argument to be all cloaked. But if those arguments aren't waived, then the district court misunderstood the argument. Well, I think that they were all conflated together. I understand. Is your position that the due process argument is waived? Our position is that they're one and the same. That his arguments were one and the same and by denying it he was denying the real crux of the issue. He's either bringing a Sixth Amendment claim only or he's bringing a Sixth Amendment claim and a due process claim. Is the government's position that he only brought a Sixth Amendment claim? From our reading of the motions, it appears that all of the motions were cloaked in an effective assistance of counsel claim. Not what I asked. Is the government's position that he brought only a Sixth Amendment claim? Yes. Okay. So the due process claim, in your view, is waived? Yes, Your Honor. Okay. But that's not saying that those words were not brought up in the motion. I don't want to create that the government is saying that those words were never brought up or that the prosecutor stated. All of that was brought up in the motion. However, when you look at the case law supporting his relief, it all is referring to an effective assistance of counsel. Suppose we disagreed with you that the due process was waived. The District Court did not address the due process claim settlement. No, it did not, Your Honor. So would there be any problem with us vacating and remanding for the District Court to address that question first? Because if it ruled favorably to Petitioner on that issue, which it may not after whatever hearing is held, the Sixth Amendment issue and the Teague issue would be an irrelevance. It would be mooted. That would be correct, Your Honor. If, indeed, that claim was preserved and the court did not rule on it and then he is entitled to some sort of answer, whether it be a dismissal or the granting of the written situation, then obviously that is an avenue here. Counsel, I am frankly a little surprised that you would press this waiver argument so hard since the government itself is vulnerable to a waiver argument with respect to its request that we look at material never presented to the District Court and decide really as a factual matter that the argument that he is making about misrepresentations, what he did or did not understand, is not a good argument. It seems to me there is a much stronger argument against you on that waiver issue. Is this what is called sauce for the goose, sauce for the gander? Yes, Your Honor. The government at this point is standing in front of you recognizing that the better practice would not have been to include that transcript. We also recognize that the proper procedure would have been to move for leave to allow that transcript to be made part of the record. And in doing so, we know that the general rule is that new evidence should not be brought before the District Court, especially in terms, no matter how relevant, if it is factual evidence that was not brought before the District Court. Now, in this case, there was this very, very odd situation where even though the case is somewhat old, almost 15 years old here, however, that the sentencing hearing transcript and the change of plea hearing transcript could not be recovered by the court reporter. And the government was able, after the appeal was found, to find this. And while it is relevant because it goes to the crux of the issue, it was included in the brief. But we recognize that the better practice would have been to advise the court and the defense counsel of such. And going to counsel's argument that this is not proper conduct, I would say that this is not an opportunity to throw the baby away with the bath water. Here we have facts that, if this case were to be remanded, go to the crux of the issue. This First Circuit in United States v. George has explained that the issuance of the writ of quorum novus is in rare and extraordinary circumstances where it hinges upon justice. And in this case, it would be, if it is remanded, if the court finds that there is a Fifth Amendment issue or that the Sixth Amendment issue was decided improperly and the court would have to get to the facts upon this, not including this would seem to fly in the face of justice, which is what precisely we want to avoid in the issuance of a writ of quorum novus, because we know that judgment finality is not something that should be lightly cast aside and that this should only enter in extreme circumstances. Now, that remand would only happen in one of two situations. One, if this court were determined that the Fifth Amendment issue was not properly decided and that the court should do that, or if this court were determined that the district court erroneously decided the Sixth Amendment issue. Now, when we look at the Sixth Amendment court's order here, it basically retracts the rationale in Padilla en Chavez. In Padilla en Chavez, obviously the Supreme Court created a new rule that counsel is supposed to give affirmative advice. It's supposed to advise their clients about the deportation consequences of their guilty plea. And it was a new rule because all of the circuits had basically determined that immigration is a collateral consequence to a guilty plea. However, in that case, both Padilla en Chavez talked about that there were a handful of circuits, because in both of those cases the petitioners brought this to the Supreme Court's attention, that it held that affirmative misadvice could rise to the level of an ineffective assistance of counsel claim. However, the First Circuit is silent on that specific issue of whether affirmative misadvice in the immigration context regarding deportation consequences would rise to the level of an effective assistance of counsel claim. And that is precisely what the First Circuit, that is precisely what the district court in this case held. It said, well, we know that Chavez says that Padilla is not retroactive. Your plea happened prior to Padilla, so Chavez and Padilla are of no relief to you. Now, when we look at the First Circuit case law, this circuit is not among the circuits that had this specifically with regards to immigration consequences. We haven't said the opposite. No, we have not said the opposite. So then it's just a matter of you have to decide whether this was a case, the type of case that, unlike Padilla, was a preexisting rule that hadn't been applied to a new set of facts. Padilla makes clear that if it's a preexisting rule, then the fact that it comes up in a new factual context doesn't make it a new rule, it makes it an application of an old rule. And the issue is, was there an old rule that a lawyer, at least with respect to something as important as a plea, cannot give affirmative misadvice that would bear on whether they would plea? No, Your Honor. In this circuit, and the petitioner cited a series of cases from the 80s and 70s and as early as the 90s, citing to, by analogy, parole eligibility, and that also being a collateral consequence of the plea, saying that it could, and that there's no blanket rule that misadvice automatically includes this. But we just never had to decide the issue in any of those cases. And we always find it was never prejudicial. Exactly. So we just never had to decide whether or not there was that preexisting rule. The fact that we hadn't decided doesn't mean we decided there was no such preexisting rule. Agreed, Your Honor. Those cases also were never brought to the district court's attention. The Cephalonis case and the Wellman case were all argued on the appellate level. And so when the district court went searching for these types of cases that were cited in Padilla that specifically had to do with the immigration consequences of the plea, the First Circuit did not have one of those. So based on that, he held on Gonzales, which stated that immigration is a collateral consequence. Defense counsel does not have a duty to discuss that prior to the plea. Counsel, haven't we said in the Fifth Amendment area that our law, although we may not have resolved this issue in the Sixth Amendment area, in the Fifth Amendment area, we have said in precedence that an affirmative misrepresentation by the government, even on a matter that might be deemed collateral, could raise a serious constitutional issue. We have been very clear about that. Have we not in the Fifth Amendment area? Your Honor, I am clear that in one of the cases cited by the defense, the Wellman case, coming out of Maine, interestingly enough, in that case, it was a prosecutor that had given the alleged misinformation. And the court was going to apply the same two-standard test, was this misinformation and whether it indeed prejudiced the defendant on that case. So it applied the same two-prong test in sort of the same Strickland analysis, even though it was the prosecutor in that case that didn't even provide misinformation. In that case, it was just the total number of pretrial detention days that the defendant had served. And then it ended up that those would not be credited down the line. And the court found that to be more material to inadvertent omission as opposed to misadvice. However, there is also another hurdle here in terms of the plea agreement, which appears to foreclose defendant's argument that there were other promises made that were not included in the plea agreement. Just so I understand your position on the court question, if the defense attorney specifically advises the defendant that the plea will not result in their deportation, and that's just clearly wrong. And it's clear on the record that the defense, it's a very minor offense with a huge consequence. He's got U.S. citizen children, et cetera. So no one would think that if he knew the consequences, he would have actually taken the plea. Your position is in that circumstance that the plea is knowing. No, we agree with what the solicitor general argued in Padilla. Because in Padilla, the solicitor general specifically had originally just stated that Padilla's rule should be limited. No, I didn't ask about Padilla's rule. I'm curious if you have a view as to whether the plea would be knowing. No, Your Honor. I understand. And I'm sorry I'm answering your question in a roundabout way. But the solicitor general in Padilla stated that misadvice would constitute ineffective assistance of counsel. And he urged the court to limit that. We are not stepping away. That's not my question. As the Department of Justice. That's not my question. I want to know if the plea would be knowing in a constitutional sense. Would it be a knowing plea? Not whether there's ineffective assistance of counsel. Does the government have a position as in that circumstance, would it be a knowing plea? Well, Your Honor, I believe that the solicitor general's position sheds light on your question. Because if not providing, if providing the wrong information would rise to ineffective assistance of counsel, then knowing the wrong information would also make it an unknowing plea. The Supreme Court could have responded affirmatively to the S.G.'s argument in Chayadez, right? And specifically said what you're arguing. Well, the Supreme Court. That misadvice and failure to advise are one and the same, correct? And they did not. Well, the Supreme Court, what they did in that case is that they said limiting Padilla to only be to give attorneys the incentive to not give any advice for fear that it would be wrong. And then we would have. But that only is absurd if our assumption is that the default is that you can't misadvise. Yes, Your Honor. But if you can misadvise, it's not really absurd to say that you don't have to tell people something. No, but they were saying that deportation is different. And this is a case that if that you should, what I'm saying is in the context of deportation, when they say it would be absurd to have a rule that did not extend to silence, the predicate for that has to be because you would have a duty not to misadvise. Of course, Your Honor. That's what I've been. But doesn't that suggest that there was a pre-existing rule with respect to misadvice and that the case of non-advice would be something distinct, which Chayadez says it is. Well, Chayadez also notices that those specific circuits, those handful of circuits that had that pre-existing law, that they coexisted happily with the fact that there was the separation rule of collateral and direct consequences of a guilty plea. Isn't that consistent with the idea that there was a pre-existing rule barring misadvice? Yes, Your Honor. Yes, it is consistent. However, you need to look at whether there's not the, I believe the 11th Circuit in the Dow Morgan's case stated that there's not a general rule that all misadvice would include, would be objectively reasonable and that would in and of itself be an effective assistance of counsel. Because when we look at an effective assistance of counsel, the first prong of Strickland advises us that we need to see whether the lawyer, whether his duties fell below the objective standard of reasonableness. So there may be a situation when misadvice doesn't necessarily fulfill the Strickland case. So that general per se rule I wouldn't say is supported by the case law. Thank you. Thank you, Your Honor. Well, that was remarkable. We have now the government has changed its position three times in the case. The presentation at oral argument disavows the way it was presented in the district court and the way it was presented in their brief. And this court should not permit appeals to be adjudicated in that way. It underlines the point I was making that the court should grant our motion to strike the government's addendum, which they now disavow and say they shouldn't have filed, which would start to make the point affirmatively, and not remand without some advice that we don't start with a clean slate in this kind of situation. Counsel, I understand your indignation. But on the other hand, at least on its face, the material that the government has submitted does raise some serious questions about the allegations that are being made by your client. I mean, if we were to remand, and the objective on remand is to get at the truth of the matter, I don't understand, again, why we should, I mean why should we sanction the government at the cost of circumscribing the process in a way that we may never find out what actually happened here? That doesn't make a lot of sense to me. It happens in litigation all the time. And the evidence, the material the government has proposed to submit now, is relevant. But it is far from determinative, as they claim. That excerpt, if you want me to talk about it with specifics, we have a short excerpt of cross-examination from a trial at which, to give a fair reading of those three or four pages, two prosecutors are doing their darndest to prevent these questions from being answered. What are they trying to keep from being said? The judge is putting strict limits on the cross-examination on this topic, saying it's tangential, it's irrelevant. And the defendant, my client, is giving what sound like well-trained answers, almost like an FBI agent. He's not exactly answering the question that's being asked, and being very precise and narrow in his words, the way a savvy witness responds to cross-examination. So we don't learn a lot from what the testimony was in that cross. What we learn is that the government was trying to prevent the truth from coming out during that cross on this subject, and that it's a snippet. We didn't even, I mean, I wasn't even given a copy of this transcript. All I got is these four pages attached to a brief. I don't even know if there's other relevant material in that book. And I don't want to re-litigate this case and hold a trial de novo in the Court of Appeals. Can I ask you one question before, because your time is up, before you step down about just the timeliness of the filing of this Quorum Novus petition? Sure. Two points. One, does the government make any argument that it was filed too late? No, they conceded that point in the district court, and I hope they're standing by that. They conceded that point in the district court? Yes. Okay, just a second point. And didn't dispute it in their brief on appeal. What are we to make of in trying to understand the argument here, the fact that the PSR specifically says that he's going to face immigration consequences? Wouldn't that PSR have been reviewed by the? Yes. But only after the plea? Is that the idea? Well, certainly, yes. I made two points in my reply brief about this. One is that it's all after the plea, and the second is that it strongly corroborates that the defense counsel was giving wrong advice to his client, because the defense objected to that paragraph in the PSI, even though the PSI was correct. And maybe the timeliness point is out of the case. But if that's right, it does seem odd that your client waited 11 years, given what you just said, which is that the PSR confirms that the advice he was getting was wrong. So on your account, we have a lawyer saying there's no immigration consequence, but a PSR is saying there is an immigration consequence. So why should the defendant believe a probation officer who's not a lawyer over his own lawyer who's saying this is incorrect? The pre-sentence report is not always correct from a defendant's point of view who's no expert. But that's not in the case in any way. That issue of whether he should have acted sooner. And just to finish on the timing, if I may, and then immigration does not, in fact, come after him for 10 years. Then he sees an immigration. This is the story that the papers tell. He then talks to an immigration lawyer a couple of years ago who says, You're an aggravated felon and you have no defense to deportation and you must not visit your family in Dominican Republic because they won't let you back in the United States to your home. Thank you. And your American citizen children. Thank you.